IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRYSTAL LYNN SEYBERT, )
 )
      Plaintiff, )
  -vs- ) Civil Action No. 16-373
 )
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
 )
      Defendant. )

AMBROSE, Senior District Judge

## OPINION

Pending before the court are Cross-Motions for Summary Judgment. (ECF Nos. 11 and 13). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 12 and 14). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment (ECF No. 11) and granting Defendant's Motion for Summary Judgment. (ECF No. 13).

**I.**    **BACKGROUND**

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") pursuant to the Social Security Act ("Act"). Plaintiff filed her applications alleging disability beginning on June 22, 2007. (ECF No. 7-5, pp. 2, 9). Administrative Law Judge ("ALJ"), Daniel F. Cusick, held a hearing on February 28, 2014 (ECF No. 7-2, pp. 36-88). On April 15, 2014, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 7-2, pp. 19-31).

After exhausting all administrative remedies, Plaintiff filed the instant action with this court. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 11 and 13). The issues are now ripe for review.

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments

prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B.** **Severe Impairment**

At step two of the analysis, an ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. §404.1520(a). An impairment is not severe if it does not significantly limit the physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c), §404.1521(a). If a claimant is found to have a severe impairment, then the ALJ proceeds to the next step. 20 C.F.R. §404.1520(a).

In this case, Plaintiff argues that the ALJ erred in failing to find additional severe impairments. (ECF No. 12, pp. 10-13). Although the ALJ did not find certain impairments to be severe, the ALJ found that Plaintiff has the following severe impairments: seizure/pseudo seizure disorder, obesity, and bipolar disorder. (ECF No. 7-2, pp. 22-23). So, the ALJ proceeded to the next steps. (ECF No. 7-2, p. 23). Thus, Plaintiff was not denied benefits at step 2.

The ALJ proceeded beyond step 2. (ECF No. 7-2, pp. 23-31). In so doing, the ALJ acknowledged that in making the residual functional capacity ("RFC") determination he

3

considered all impairments, including any impairment that is not severe. (ECF No. 7-2, p. 25). Consequently, the ALJ proceeded to consider the Plaintiff's severe and non-severe impairments in the evaluation process and in determining Plaintiff's RCF. (ECF No. 7-2, pp. 23-31). Therefore, I find any purported error was harmless such that a remand on this basis is not warranted. *Salles v. Commissioner of Social Sec.,* 229 Fed.Appx. 140, 144-145, n. 2, 2007 WL 1827129 (3d Cir. 2007); *Sheeler v. Astrue*, No. 08-64J, 2009 WL 789892, 4 -5 (W.D.Pa. March 24, 2009); *Hanke v. Astrue, No. 12-2364,* 2012 WL 6644201, *4 (7th Cir. Dec. 21, 2012).

### C. Medical Opinion Evidence

Plaintiff next argues that the ALJ erred in failing to adequately explain why he did not adopt the opinions of Plaintiff's treating psychiatrists (Drs. Simmons, O'Connor and Norton) and the consultative psychological examiner, Dr. Eisler. (ECF No. 12, pp. 13-19). The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 416.927(c)(4).

Contrary to Plaintiff's assertion that an ALJ "**must** give greater weight to the findings of a treating physician than" a consulting examiner, the Court of Appeals for the Third Circuit has

4

held otherwise. (ECF No. 12, p. 14). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

In this case, Plaintiff implies that the ALJ erred in failing to give weight to the opinions of Drs. Simmons, O'Connor and Norton and only considered Dr. Jarrett. (ECF No. 12, pp. 13-16). After a careful review of the record, I disagree. The ALJ stated that he gave Dr Jarrett's opinion that Plaintiff was disabled little weight because that was an issue reserved for the Commissioner. (ECF No. 7-2, p. 28). In making this conclusion, the ALJ cited to Exhibits D5F an D6F. *Id.* Those exhibits contain multiple check box PA Department of Public Welfare Employability Assessment Forms filled out by Dr. Jerrett, as well as Drs. Simmons, O'Connor

5

and Norton. (ECF No. 7-10, pp. 32-51). In citing to the entire exhibit, I find that the ALJ was referring to all of the doctors and not just Dr. Jarrett. Furthermore, the forms all go to the ultimate issue of disability. *Id.* Ultimate decision of disability as it relates to social security claims, however, is reserved solely for the ALJ. 20 C.F.R. §§ 404.1527, 416.927. Thus, the ALJ was not required to give these opinions any weight or special significance. Therefore, I find no error in this regard.[2]

Next, Plaintiff submits that the ALJ erred in giving Dr. Eisler's consulting opinion little weight. (ECF No. 12, pp. 13-16). In rejecting Dr. Eisler's opinion, the ALJ stated:

> Psychiatrist Dr. Eisler examined the claimant in February 2014 at the request of the claimant's attorney, and concluded that the claimant is disabled by marked debilitating depression. (Ex D9F) I give this opinion little weight, as it is not consistent with the medical evidence and this examiner is not familiar with the Social Security Disability program and its evidentiary requirements. It appears that Dr. Eisler uncritically accepted the claimant's allegations during this brief, clinical encounter, and offered no objective findings to support a GAF[3] score of 30, which is reflective of behavior influenced by delusions or hallucinations, serious impairment, or inability to function in all areas. (DSM-IV) What's more, this opinion is not consistent with the treating source treatment records showing that the claimant is psychiatrically stable, or the recent treating source GAF scores of 71. (Ex D13F) Indeed, the claimant's admission of no significant psychiatric symptoms is supported by the unremarkable mental status evaluations performed by both the treating neurologists and the mental health providers, all of which outweigh Dr. Eisler's unsupported snapshot assessment.

---

[2] Furthermore, even if I was to find that the ALJ did not consider the same, it would be harmless error, because they all determine disability, which is an issue of the ALJ. *Id.* Thus, a remand for the same would be futile. *See, Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir. 2005)(remand is not warranted where "it would not affect the outcome of the case").

[3] GAF is an acronym which refers to an individual's score on the Global Assessment of Functioning Scale. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). The scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social, and occupational limitations. *Id.* The GAF ratings range from 1 to 100. GAF scores are arrived at by a clinician based on his or her assessment of a patient's self-reporting. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). GAF scores do not have a direct correlation to the disability requirements and standards of the Act. *See,* 65 Fed. Reg. 50746, at 50764-65 (2000). In fact, as of May 18, 2013, the American Psychiatric Association no longer endorses the GAF scale as a measurement tool. *See,* Diagnostic and Statistical Manual of Mental Disorders (DMS-V) (5th ed. 2013). Nonetheless, GAF scores are still medical evidence that informs a Commissioner's judgment in assessing whether an individual is disabled and must be considered as such.

(ECF No. 7-2, pp. 28-29)(footnote added).  Plaintiff attacks the ALJ's reliance on records that state Plaintiff was "stable."  *Id.* at p. 15.   First, Plaintiff acknowledges that some records do indicate that Plaintiff is stable.  (ECF No. 12, p. 15).  And, while it is true that stability does not necessarily translate into work related abilities, this is but just one of the many reasons relied upon by the ALJ in rejecting the opinion of Dr. Eisler.  (ECF No. 7-2, pp. 28-29).  Thus, I find that remand is not warranted on this basis.

Plaintiff also suggests that the ALJ should not have rejected Dr. Eisler's GAF score of 30 in favor of the recent GAF scores of 71.  (ECF No. 12, p. 15).  To that end, Plaintiff suggests that the GAF scores of 71 were from a nurse practitioner, who is not an acceptable medical source, implying that the ALJ should not have considered them.  *Id.*  I disagree.  While nurse practitioners are not "acceptable medical sources, they are considered "other sources."  .  SSR 06-3p*.*  Information from "other sources" cannot establish impairment, but can provide insight into the severity of the impairment and how it affects the individual's ability to function.  *Id.*  Thus, an ALJ is required to consider the same.  Furthermore, I find that ALJ appropriately considered the multiple GAF scores in evidence and weighed against the other evidence of record.  (ECF No. 7-2, pp. 28-29).  These are valid and appropriate reasons for weighing evidence.  Consequently, I find no error in this regard.

### D. **Residual Functional Capacity ("RFC")** [4]

First, Plaintiff argues that the ALJ erred in determining her RFC because the ALJ should have given substantial weight to the opinions of her treating psychiatrists (Drs. Jarrett, Simmons, O'Connor and Norton) and the consultative psychological examiner, Dr. Eisler.  (ECF No. 12, p. 17).  As set forth above, I do not find the arguments of Plaintiff in this regard to warrant a remand.

---

[4] RFC refers to the most a claimant can still do despite his/her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. § 416.945(a).

Second, Plaintiff suggests that the ALJ erred in failing to give "further consideration" to her testimony regarding her migraines, knee pain and back pain. (ECF No. 12, p. 17). I disagree. An ALJ is charged with the responsibility of assessing Plaintiff's credibility. In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id.* I must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975). Here, the ALJ did exactly that and found Plaintiff's statements are not entirely credible. (ECF No. 7-2, pp. 26-28). Furthermore, based on the entire record as a whole, I find the ALJ appropriately considered Plaintiff's migraines, knee pain and back pain and I further find there is substantial evidence to support the ALJ's decision to find Plaintiff not entirely credible. (ECF No. 7-2, pp. 19-31). Thus, I find no merit to Plaintiff's argument.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRYSTAL LYNN SEYBERT,                )
                                     )
       Plaintiff,                   )
                                     )
 -vs-                                )    Civil Action No. 16-373
                                     )
NANCY A. BERRYHILL,[5]               )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
       Defendant.                   )

AMBROSE, Senior District Judge

**ORDER OF COURT**

THEREFORE, this 26th day of April, 2017, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 11) is denied and Defendant's Motion for Summary Judgment (Docket No. 13) is granted.

                              BY THE COURT:

                              s/ Donetta W. Ambrose
                              Donetta W. Ambrose
                              United States Senior District Judge

---

[5] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.